IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ISAAM JAGHAMA | CRIMINAL NO. 23-157-02 |

MEMORANDUM OPINION

Rufe, J.                                                                                                      November 28, 2023

Defendants Isaam Jaghama and Al-Ashraf Khalil were indicted after a fatal fire at 300 West Indiana Avenue in North Philadelphia. Jaghama and Khalil were charged with arson and conspiracy to commit arson, and Khalil was further charged with wire fraud and use of fire to commit a felony. Jaghama has filed a Motion to Sever his trial from Khalil's trial.[1] For the reasons stated below, the motion will be denied.

I.   BACKGROUND

The government has charged Defendants based on the following allegations. On June 18, 2022, between 1:30 and 1:53 a.m., a three-story structure at 300 West Indiana Avenue caught fire. The building had a restaurant on the ground floor (Star Pizza, Fish, and Chicken) and residential apartments on the second and third floors. First responders arrived at the scene within minutes after calls to 911. At approximately 3:23 a.m., when five firefighters and one L&I inspector were still inside, the building collapsed. The L&I inspector and four of the firefighters were injured—some critically—but were rescued. Tragically, however, Lt. Sean Williamson was buried under the rubble and was pronounced dead at the scene.

---

[1] Def.'s Pretrial Mots. & Mem. of Law at 6–10 [Doc. No. 76]. All other pretrial motions contained in Defendant Jaghama's consolidated filing will be addressed by separate order.

In the days after the fire, the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") became involved in the investigation. ATF investigators recovered video footage from a neighboring business, which showed two masked individuals entering and exiting 300 West Indiana Avenue minutes before the fire began. ATF Special Agents also interviewed dozens of individuals, including Defendant Khalil, the owner of the building.

On June 22, 2022, Magistrate Judge Richard A. Lloret issued a warrant for Khalil's arrest based on a Complaint charging Khalil with arson in violation of 18 U.S.C. § 844(i) and aiding and abetting. Khalil was arrested approximately two days later. During his pretrial detention,[2] Khalil attended several meetings with the government pursuant to a proffer agreement. According to Jaghama, Khalil gave statements at those proffer sessions that incriminated Jaghama.[3]

On April 13, 2023, a grand jury in the Eastern District of Pennsylvania returned a four-count Indictment,[4] which, as relevant here, charged both Jaghama and Khalil with conspiracy to commit malicious damage by means of fire of a building used in interstate commerce in violation of 18 U.S.C. § 844(n) and malicious damage by means of fire of a building used in interstate commerce and aiding and abetting in violation of 18 U.S.C. § 844(i) and 18 U.S.C. § 2. On August 17, 2023, the grand jury returned a Superseding Indictment, which added clarifying language but did not add new defendants or charges.[5] The Superseding Indictment alleges that Defendants Jaghama and Khalil were the two individuals captured on video entering 300 West

---

[2] Defendant Khalil stipulated on the record to his pretrial detention. *See* Doc. No. 7.
[3] Def.'s Pretrial Mots. & Mem. of Law at 5 [Doc. No. 76].
[4] Indictment, Apr. 13, 2023 [Doc. No. 20].
[5] Superseding Indictment, Aug. 17, 2023 [Doc. No. 62].

Indiana Avenue on the evening of the fire, and that the two of them planned and intentionally set the fire so Khalil could collect on an insurance policy worth approximately $477,300.[6]

On September 11, 2023, Jaghama filed an omnibus pretrial motion raising several distinct issues.[7] On September 25, 2023, the government filed its response.[8] The Court addresses here Jaghama's motion to sever his trial from Khalil's trial under Rule 14 of the Federal Rules of Criminal Procedure.[9]

## II.   LEGAL STANDARD

The joinder of defendants is governed by Rule 8(b) of the Federal Rules of Criminal Procedure.[10] It states:

> **(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

The Supreme Court has long recognized that joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."[11] This is particularly true where defendants have been charged with engaging in a conspiracy, as a joint trial "permits fact finders to assess the full extent of [the] conspiracy and prevents the tactical disadvantage to the government from disclosure of its case."[12]

---

[6] *Id.* at 2, 5, 7.

[7] Def.'s Pretrial Mots. & Mem. of Law [Doc. No. 76].

[8] Gov't Omnibus Resp. [Doc. No. 84].

[9] Def.'s Pretrial Mots. & Mem. of Law at 6–10 [Doc. No. 76].

[10] *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003).

[11] *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quotation marks and citation omitted).

[12] *United States v. Savage*, 85 F.4th 102, 118–19 (3d Cir. 2023) (quotation marks and citations omitted).

Federal Rule of Criminal Procedure 14 permits a court to "order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires" if it finds that "the joinder of offenses or defendants in an indictment . . . or a consolidation for trial appears to prejudice a defendant or the government[.]"[13] However, "when defendants properly have been joined under Rule 8(b), a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."[14]

### III. DISCUSSION

Jaghama seeks severance because he claims that the government will seek to introduce Khalil's prior statements incriminating Jaghama, and that Khalil is likely to invoke his Fifth Amendment right against self-incrimination at trial.[15] Thus, he contends that a joint trial will violate the Confrontation Clause of the Sixth Amendment, which guarantees a defendant in a criminal case the right to confront the witnesses against him, including an opportunity to cross-examine those witnesses at trial.[16] In *Bruton v. United States*, the Supreme Court held that a defendant's Sixth Amendment right to confront his accuser is violated when the government introduces a co-defendant's pretrial confession that inculpates the defendant, and the defendants are tried together, but the co-defendant who made the pretrial statement does not take the stand.[17] The Court held it insufficient to rely solely upon the traditional practice of instructing the jury to consider the out-of-court statement only as to the confessor and not the co-defendant, because

---

[13] Fed. R. Crim. P. 14(a).

[14] *Zafiro*, 506 U.S. at 539.

[15] Def. Jaghama's Pretrial Mots. at 8 [Doc. No. 76].

[16] *Pointer v. Texas*, 380 U.S. 400, 404, 406–07 (1965).

[17] *Bruton v. United States*, 391 U.S. 123, 126 (1968).

"there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."[18]

However, in the decades since *Bruton* was decided, the Supreme Court has narrowed the applicability of the rule. In *Richardson v. Marsh*, the Court declined to apply *Bruton* where the jury was given a limiting instruction and a non-testifying co-defendant's confession was "redacted to eliminate not only the defendant's name, but any reference to his or her existence," thereby rendering the confession "not incriminating on its face[.]"[19] Indeed, the *Richardson* Court characterized *Bruton* as a "narrow exception" to the "the almost invariable assumption of the law that jurors follow their instructions[.]"[20] The Court rejected the notion that district courts must always try defendants separately when there is an incriminating confession, or that courts must entirely "forgo use of codefendant confessions" in joint trials, because to do so on the basis of the Confrontation Clause would be a "price [that] is too high[.]"[21]

Most recently, in *Samia v. United States*, the Court suggested that the *Bruton* exception to trial courts' longstanding practice of using limiting instructions may no longer be supported, although it did not go so far as to overrule *Bruton* entirely.[22] The Court held that "the *Bruton* rule applies only to 'directly accusatory' incriminating statements, as distinct from those that do 'not

---

[18] *Id.* at 135.

[19] *Richardson v. Marsh*, 481 U.S. 200, 208, 211 (1987).

[20] *Id.* at 206.

[21] *Id.* at 210.

[22] *Samia v. United States*, 599 U.S. 635, 699 (2023). Justice Kagan noted in dissent that "one might wonder after reading today's decision whether *Bruton* is the next precedent on this Court's chopping block." *Id.* at 666 (Kagan, J., dissenting). Justice Kagan further commented that "[t]he one reason it may not be is that there is no need for formal overruling: Under this decision, prosecutors can always circumvent *Bruton*'s protections." *Id.*

refer directly to the defendant' and 'become incriminating only when linked with evidence introduced later at trial.'"[23] As relevant here, the *Samia* Court found it important that the co-defendant's confession in that case could not have been further modified "to make it appear, as in *Richardson*, that he had acted alone."[24]

Jaghama argues that the *Bruton* rule would be violated if he and Khalil were tried jointly, and that it would be insufficient to redact Khalil's statements to include only references to "another person," as the Supreme Court permitted in *Samia*, because the context of this case would make it "obvious to the jury who the 'another person' was."[25] In the alternative, Jaghama asks the Court, if it denies severance, to require the government to "eliminate and omit all references in Khalil's statements that [Jaghama] was involved in the preparation, execution and/or cover-up of the arson."[26]

The government first responds that Khalil's incriminating statements were made during proffer sessions, meaning they are admissible at trial only if "Khalil or his counsel present evidence or argument contrary to a statement made in the proffers, through direct testimony, eliciting information in cross-examination of government witnesses, or through statements of defense counsel."[27] The government further argues that even if Khalil's statements become admissible, they would "be offered through testimony of an ATF agent who was present for the proffers and statements," and therefore "*any mention* of Jaghama, or even of another person with

---

[23] *Id.* at 652–53 (quoting *Gray v. Maryland*, 523 U.S. 185, 194 (1998)).

[24] *Id.*

[25] Def. Jaghama's Pretrial Mots. at 8–9 [Doc. No. 76].

[26] *Id.* at 10.

[27] Gov't Omnibus Resp. Opp. Def. Jaghama's Pretrial Mots. at 18 [Doc. No. 84].

Khalil, can be properly tailored in the agent's testimony."[28]

The government's apparent agreement to remove from Khalil's pretrial statements "any mention of Jaghama" rather than to use "the other person" resolves any concerns under *Bruton*. Indeed, the government reiterated at oral argument, "if we get to the point in the trial where Mr. Khalil's proffer statements become admissible evidence, they can easily be modified" to avoid any *Bruton* concerns, "[a]ny mention of Jaghama can be effectively redacted in the agent's testimony about the proffer," and the Court "can give a limiting instruction."[29]

The Court sees no basis here to overcome the strong preference in federal courts to try co-conspirators together. The *Bruton* issues Jaghama raises can be addressed, if necessary, through redactions that remove any reference to Jaghama and an appropriate limiting instruction to the jury. Jaghama has not presented arguments suggesting that he would otherwise suffer unfair prejudice from a joint trial, or that a joint trial would prevent the jury from making a reliable judgment about his guilt or innocence. The Court holds that a joint trial of Jaghama and Khalil is the best means of promoting efficiency and serving the interests of justice in this case.

## IV. CONCLUSION

For the above-stated reasons, Defendant Jaghama's Motion to Sever will be denied. If the government seeks to introduce Defendant Khalil's out-of-court statements at trial, the Court will consider the parties' proposed redactions and provide a limiting instruction to the jury at the appropriate time. An order follows.

---

[28] *Id.* at 24 (emphasis added).

[29] Hr'g Tr., Oct. 31, 2023, at 100 [Doc. No. 93].