MICHAEL N. HUFF, ESQUIRE                                       ATTORNEY FOR DEFENDANT
Member of the PA, NJ & NY Bars
1333 Race Street
Philadelphia, PA 19107
(215) 432-7311
michael.huff.esq@gmail.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No.: 0313 2:23CR00157-002 |
|  | : |  |
| v. | : |  |
|  | : |  |
| ISAAM JAGHAMA | : |  |

### DEFENDANT'S SENTENCING MEMORANDUM

**TO THE HONORABLE CYNTHIA M. RUFE:**

      The Defendant, ISAAM JAGHAMA, by and through their undersigned counsel, Michael N. Huff, Esquire, respectfully submits the following Sentencing Memorandum to assist the Court in determining a fair and just sentence. For the reasons stated herein, Counsel argues that a sentence of 20 years or less would be reasonable and sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). In short, the crime was not the Defendant's idea. He is 32 years old, has four young children, a strong work history, no prior arrests or convictions, moved to the U.S. from Palestine, has a seventh grade education and is illiterate.

**I.     STATEMENT OF FACTS**

      On Monday, June 18, 2022, shortly before 2:00 a.m., fire crews were called to 300 West Indiana Avenue in Philadelphia's Fairhill neighborhood. The fire was placed under control over an hour later. Firefighters remained working when the building collapsed after 3:00 a.m. A second alarm was declared after the collapse occurred. Tenants on the second and third floors of the property were safely evacuated. The first floor was occupied by a business called Star Pizza,

1

Fish and Chicken ("Star Pizza").  Star Pizza was co-owned by Amjad ("MJ") Rahim and Nemer Yahya.  The second and third floors were residential apartments. The building itself was owned by codefendant Al-Ashraf Khalil.

Three firefighters and one Department of Licenses and Inspections ("L&I") inspector were initially trapped inside 300 West Indiana Avenue. They were quickly rescued and transported to Temple Hospital. Thomas Rybakowski, Supervisor, Emergency Services Unit at L&I, was treated and released, as were Firefighters Lt. Clarence Johnson and Lt. Sylvester Burton.  Firefighters Robert Brennan, Jr. and Dennis Daly were in critical but stable condition at Temple Hospital.

Two other Fire Department members were trapped under debris. Firefighters began a search and rescue operation after the initial collapse. Around 7:00 a.m., the trapped firefighters were removed from the rubble. One Firefighter, Robert Brennan, Jr., was rushed to Temple Hospital. The other, Lieutenant Sean Williamson, was pronounced deceased on the scene at 6:45 a.m.  The collapse response was placed under control at 7:12 a.m.

## II.     PROCEDURAL HISTORY

On June 22, 2022, ATF Investigators were notified that Khalil booked a flight from JFK Airport in New York to Amman, Jordan. Khalil was denied entry by Jordanian Customs Officials and flew back to JFK Airport. On this same date, an arrest warrant was issued and a Criminal Complaint was filed against Al-Ashraf Khalil for False Statement or Representation Made to a Department or Agency of the United States, in violation of 18 U.S.C. § 1001(a)(2). The Affidavit alleges that Khalil made a false statement to ATF regarding the fire. On June 24, 2022, AFT and Customs Officials boarded the plane at JFK Airport, arrested Khalil and he was remanded to the Federal Detention Center in Philadelphia.

2

On April 13, 2023 an Indictment was filed against Khalil and Isaam Jaghama. On April 19, 2023, Isaam was taken into custody and ordered detained. On August 17, 2023, a Superseding Indictment was returned and filed against Khalil and Isaam charging the following:

|    | Count | Charge | Statue | Defendant | Verdict |
|----|-------|--------|--------|-----------|---------|
| 1. | One | Conspiracy to commit malicious damage by means of fire of a building used in interstate commerce | 18 U.S.C. § 844(n) | Al-Ashraf Khalil and **Isaam Jaghama** | Guilty |
| 2. | Two | Malicious damage by means of fire of a building used in interstate commerce and Aiding and abetting | 18 U.S.C. § 844(i) and 2 | Al-Ashraf Khalil and **Isaam Jaghama** | Guilty |
| 3. | Three | Wire fraud | 18 U.S.C. § 1343 | Al-Ashraf Khalil | |
| 4. | Four | Use of fire to commit a felony and Aiding and abetting | 18 U.S.C. § 844(h) and 2 | Al-Ashraf Khalil | |

On September 11, 2023, the Defendant filed Pretrial Motions and Memorandum of law under seal and a Response to the Government's Motion in Limine. The Defendant's Pretrial Motions included a Motion in Limine to Exclude Irrelevant and Prejudicial Evidence, Motion to Sever Trial and a Motion to Join in Codefendants' Motions. The Defendant's Response to the Government's Motion in Limine including Opposition to the Government's Motion to Exclude Improper Defenses including arguing that the firefighter's death was a "direct and proximate results" of the Defendants' actions and was "foreseeable." On November 13, 2023, a motions hearing was held.

On November 12, 2024, trial by jury began. On November 21, 2024, the Defendant was convicted on both Counts 1 and 2 after an eight-day jury trial. Sentencing is scheduled for October 22, 2025. This Sentencing Memorandum follows.

### III.    DEFENDANT'S PERSONAL HISTORY

The Defendant was born in July 1993. He is 32 years old, married with four children. He was born in Ramallah, a Palestinian city in the West Bank. He has seven brothers and sisters.

Two of his siblings passed away due to a heart defect/condition. The Defendant's parents and siblings live in Ramallah. One of the Defendant's sisters, Dalal, resides in the U.S. While living in Ramallah, the Defendant reported having enough food to eat about 65% of the time. The Defendant attended school through the seventh grade. As a result, the Defendant speaks and understands Arabic but cannot read or write. He has limited understanding of English.

At 19 years old, the Defendant married Safa Ziyadeh in Palestine. Safa relocated to New Jersey and gave birth to their son Omar Jaghama (age 10). At 21 years old, the Defendant reunited with Safa in New Jersey and they had two more children Layali (age 8) and Rifah (age 7). The Defendant and Safa separated and he moved to Philadelphia to live with Safa's uncle Ziyadeh Ziyadeh. The Defendant's children reside with their maternal Uncle Mohdy Ziyadeh and grandparents in Mays Landing, New Jersey. Mohdy described the Defendant as a good guy who got caught up with the wrong people.

After moving to Philadelphia, the Defendant met and married Asma Ali. The Defendant and Asma have a son Emran Jaghama (age 2) who lives with this mother in Philadelphia. Asma described the Defendant as a very good man who loves his job, family and children. Emran was just six months old when the Defendant was incarcerated. At the time of the instant offense, the Defendant was working as a delivery driver for a thrift store. The Defendant was described by his employer as a good worker, very responsible, and a good guy who everyone loves in the community.

While at the FDC, the Defendant has not committed any disciplinary infractions. He has participated in educational courses including Facts About MRSA, How to Play Dominoes, Stretching Class and Bowling Basics Class. The Defendant has worked as a unit orderly at the FDC since November 2024.

The Defendant is legally residing in the U.S. as a permanent resident but will likely be removed due to this conviction.

IV.    **SENTENCING CONSIDERATIONS – THREE STEP PROCESS**

The Third Circuit has held that a sentencing court must engage in a three-step procedure as set forth in *United States v. Gunter,* 462 F.3d 237, 247(3d Cir.2006) ("Gunter I") which has been effectively ratified by the Supreme Court's decision in *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 552 U.S. 38, 128 S. Ct. 586 (2007). *See U.S. v. Levinson*, 543 F.3d 190, 194 (3$^d$ Cir. 2008). "A district court must begin the process by first calculating the applicable advisory Guidelines range. After that initial calculation, the court must then rule on any motions for departures and, if a motion is granted, state how the departure affects the Guidelines calculation. Finally, after allowing the parties an opportunity for argument, the court must consider all of the § 3553(a) facts and determine the appropriate sentence to impose, which may vary from the sentencing range called for by the Guidelines." *U.S. v. Tomko*, 562 F.3d 558, 567 (3$^d$ Cir., 2009).

V.    **APPLICATION OF THE STATUTORY MANDATES AND THE UNITED STATES SENTENCING GUIDLELINES TO THIS CASE (STEP 1)**

    A.    **Statutory Maximums and Mandatory Minimums**

On Counts 1 and 2, the minimum term of imprisonment if seven years and the maximum is life. PSR at ¶ 139, p. 32 (6/27/2025).

    B.    **The Plea Agreement**

There was no plea agreement in this case.

C. **United States Sentencing Guidelines ("U.S.S.G") Calculations and Presentence Investigation Report ("PSR")**

According to the Pre-Sentence Investigation Report ("PSR"), The Defendant's total offense level is a 43. PSR at ¶ 87, p. 25 (6/27/2025). The Defendant has no prior arrests or convictions. Thus, his criminal history is category I with zero criminal history points. PSR at ¶ 91, p. 25 (6/27/2024). Accordingly, the guideline imprisonment range is life. PSR at ¶ 140, p. 32 (6/27/2025).

VI. **MOTIONS FOR DOWNWARD DEPARTURES OR ADJUSTMENTS (STEP 2)**

No Motions for Downward Departures or Adjustments have been filed.

VII. **MOTION FOR VARIANCE - 18 U.S.C. § 3553(a) FACTORS (STEP 3)**

The Defendant urges this Court to consider a variance from the advisory Sentencing Guidelines under the factors contained in 18 U.S.C. § 3553(a). In short, the Defendant is 32 years old, has three young children, a strong work history, no prior arrests or convictions, moved to the U.S. from Palestine, has a seventh grade education and is illiterate. Finally, the fire and insurance scheme were not his idea.

Congress has mandated that a sentencing Court must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ... issued by the Sentencing Commission[;]

(5) any pertinent policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a)(1)-(7).

It should be noted that a sentencing court may not prefer a within-Guidelines sentence over a sentence outside the Guidelines."Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable." *United States v. Nelson*, ____ U.S. ____, 129 S.Ct. 890, 892, 172 L.Ed.2d 719 (2009). "[W]e reiterated that district judges, in considering how the various statutory sentencing factors apply to an individual defendant, 'may not presume that the Guidelines range is reasonable'" *Id*. (*quoting Gall v. United States*, 552 U.S. ____ , 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). And, since the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) which effectively made the United States Sentencing Guidelines advisory, the Supreme Court has continued to emphasize that the purpose of sentencing is to impose a sufficient sentence, but not greater than necessary, to achieve the sentencing goals of retribution, deterrence, incapacitation and rehabilitation. *See Kimbrough v. United States*, 552 U.S. ____ , 128 S.Ct. 558, 169 L.Ed.2d 481 (2007).

1. **The nature and circumstances of the offense and the history and characteristics of the Defendant.**

The nature and circumstances of this crime were described during the jury trial and the PSR. This was obviously a senseless crime with tragic consequences. This crime, however, that was not the Defendant's idea. Instead the Defendant's codefendant was the owner of Star Pizza and was having difficulty selling the building. As a result, he decided to set the building on fire in order to recover an insurance payout and enlisted the help of the Defendant.

As indicated above, the Defendant is married with children, has no prior criminal record, is a hard worker with extremely limited education and is illiterate. He will also likely be deported upon release from Federal Prison and will be prohibited from reentering the United States. As a result, the Defendant argues that a sentence of 20 years' incarceration would be sufficient punishment and provide a specific and general deterrent to others.

2. **The Need for the Sentence Imposed to Promote Certain Statutory Objectives.**

   A. *To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

The statutory maximum is life. The U.S.S.G. suggest a life sentence. These potential penalties certainly have the effect of promoting respect for the law. Additionally, the Defendant will suffer collateral consequences as a result of his federal conviction. He will likely be deported and unable to reenter the United States. He may never see his wife and children again.

   B. *To afford adequate deterrence to criminal conduct.*

Though a laudable goal, there is simply no empirical evidence to support the idea that lengthier sentences deter criminal conduct. Indeed, the Sentencing Commission itself has found that "[t]here is no correlation between recidivism and offense level.  Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance,

this finding should be expected. The Guidelines offense level is not intended or designed to predict recidivism." *See* U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES at 15, *available at* http://www.ussc.gov/publicat/Recidivism General.pdf.

That said, the Defendant's prosecution, conviction and sentencing in a public forum in federal court with a substantial maximum penalty and advisory guideline range is in and of itself a substantial public deterrence for others who would commit similar offenses.

### C.   *To protect the public from further crimes of the Defendant*.

This is the Defendant's first arrest and conviction. He has strong family support. **Exhibit A**. He has also demonstrated a strong work ethic and history. Finally, he will likely be deported after serving his sentence. All of these factors should persuade the Court that the Defendant is not likely to commit crimes in the future.

### D.   *To provide the Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner*.

The Defendant would certainly benefit from educational and vocational training.

### 3-4.   The kinds of sentences available and the range established by the Guidelines.

For the reasons already discussed, the Defendant urges this court to sentence him below the discretionary and advisory guideline range.

### 5-6.   Policy Statement and the need to avoid unwanted sentencing disparity among Defendants with similar records who have been found guilty of similar conduct.

As the Court and the public undoubtedly understand, "the United States maintains its distinction as the nation with the highest rate of incarceration in the world. The total correctional population of 6.9 million consists of more than 2.2 million people in prison or jail and 4.7 million under community supervision on probation or parole. The nation's correctional

population is a function of crime rates, legislative and administrative policies, and practitioner decision making that vary by state and at the federal level."Porter, N.D. (2015, February) The State of Sentencing 2014, Developments in Policy and Practice. *The Sentencing Project*. Within the last several years, numerous states and the Federal Government have implemented criminal justice policy reforms and legislation in order to combat this dubious distinction <u>especially in cases of non-violent offenses</u>. *Id*. In a speech on July 16, 2015, former Attorney General Loretta Lynch "called for reforms to America's criminal justice system and for the nation to push beyond the 'cycle of criminality and incarceration' as a way to move forward for justice and civil rights." Connolly, A.R. (7/16/2015) U.S. Attorney General Loretta Lynch calls for justice reforms. *UPI*. Criminal justice reform and mass incarceration are two of the premier issues facing our country. It is respectfully requested that the Court take these factors into consideration when sentencing the Defendant.

    7.    **<u>The need to provide restitution to any victims of the offense</u>**.

The Defendant defers to the court regarding restitution.

## VIII. <u>CONCLUSION</u>

WHEREFORE, for the foregoing reasons, it is urged that this Court impose a sentence below the U.S.S.G. range.

 

Respectfully submitted,

Date: 10/16/2025

MICHAEL N. HUFF, ESQUIRE
1333 Race Street
Philadelphia, PA 19107
(215) 432-7311
michael.huff.esq@gmail.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

    I, MICHAEL N. HUFF, ESQUIRE, hereby certify that I have served a copy of the attached Sentencing Memorandum upon the following on the Court, the Government and the U.S.P.O by email on the below date.

                                                                                     Respectfully submitted,

Date:   10/16/2025

                                                    MICHAEL N. HUFF, ESQUIRE
                                                    Attorney for Defendant
                                                    1333 Race Street
                                                    Philadelphia, PA 19107
                                                    (215) 432-7311
                                                    michael.huff.esq@gmail.com

# EXHIBIT A



**Michael Huff <michael.huff.esq@gmail.com>**

## Isaam jaghama case

**dalal ziyadeh** <ziyadehdalal@gmail.com>    Mon, Oct 13, 2025 at 2:48 PM
To: michael.huff.esq@gmail.com

To whom this may concern,

My name is Dalal Ziyadeh, the sister of Isaam Jaghama. I would like to take the time to speak on behalf of my beloved brother. Isaam is the most caring and kindest out of all my siblings. I could always depend on him and leen on him whenever I am in need. His circumstances has shock our family and hope you can see Isaam for his true character when makeing your decision for his future. I pray he comes homes back to his family that needs him and depends on him soon!

Thank you for your time and consideration
Dalal ziyadeh



**Michael Huff <michael.huff.esq@gmail.com>**

## Personal statement regarding Isaam Jaghama

**Fida Ziyadeh** <f.ziyadeh@yahoo.com>  Wed, Oct 1, 2025 at 11:08 PM
To: michael.huff.esq@gmail.com

To whom it may concern,

     My name is Fida Ziyadeh and I am writing this in regards to Isaam Jaghama. Isaam is a family friend who I have known since 2012. He is very kind, caring and helpful. Any time asked for a favor, he does with no questions asked. He will find a way to do it no matter what and will genuinely do it from his heart because he truly cares.
  Isaam is also very family oriented coming from a huge family with many siblings and cousins. He exemplifies family values and with the time spent with his own three children, taught them the importance of family as well.
  Overall, Isaam is a very genuine and caring person. He is a father, son, brother and friend to many who miss him and wish to see him home.

Sent from Yahoo Mail for iPhone

October 14, 2025

Honorable Judge Cynthia M. Rufe,

  I would like to express my deepest apologies for my actions in what took place. I have never been in trouble before. I have four children that I love and miss dearly and if anything happened to them, I would be devastated. It breaks my heart that the mistakes that I have made separate me from them.

  I keep busy as an orderly here at FDC-Philadelphia. I'm sure that the guards here will tell you that I am on of the hardest working men on the cell block. In addition to my work here, I have broken several fights and mediated several situations that could have turned violent. The work allows me to stay disciplined and to wake up every day with a purpose.

  However not a day goes by that I do not think about what happened and how it affected everyone involved. I only have one sister here in the United States and I haven't spoken to my family in over 2 years. I am very sorry to all the victims of my actions for what happened and it breaks my heart.

  I am sorry for what I did wrong. I was wrong in not acting more decisively and more forthrightly in my actions, particularly when it reached the stage of judicial proceedings. No words can describe the depth of my regret and pain at the anguish my mistakes over my actions have caused my victims, their families, my children, and my family. I cannot imagine or offer what punishment is applicable to satiate the victims and the Court's appetite for the proper justice in this matter.

Whatever the Court's sentence is, I promise to both change my behavior in the future as well as make amends with specific sets of actions on a define timeframe. I will successfully reintegrate into society. I will maintain lawful employment upon my release. I will commit myself to contributing positively to my family and community.

  I understand the gravity of your decision on what sentence I receive and I will truly be grateful for the possibility of a second chance. This statement is not made out of entitlement but with sincere humility and the hope of continuing to live a life of purpose and integrity. Thank you for your time and thoughtful consideration in deciding on what sentence is appropriate.

Sincerely,

Isaam Jaghama





Michael Huff <michael.huff.esq@gmail.com>

## Statement for Isaam Jaghama
1 message

**Nida Ziyadeh** <nidaziyadeh5@gmail.com>    Thu, Oct 2, 2025 at 3:53 PM
To: michael.huff.esq@gmail.com

Your Honor, and to whomever this may concern,

I, Nida Ziyadeh, am writing this statement in regards to the defendant, Isaam Jaghama. As I am certain that you receive a myriad of letters on behalf of others, I hope this one may still carry the weight of heartfelt meaning pertaining to Isaam's character. As an active duty member serving in our military, it has been instilled in me a core value of integrity first. It is my earnest hope that I convey that integrity and speak truthfully in respects to Isaam. I have known Isaam Jaghama for about ten years. He became a part of our family in an instant, and has always shown his honest character. Isaam has always been unwaveringly kind, thoughtful, respectful, and full of humility. He has always been the first to step up and take on any challenge to help when needed. He has always been driven to succeed for his family, his wife and children. After coming from a war torn country, where facing oppression and obstacles had become routine, he was granted the opportunity to create a better life for himself in a country that is free and just. I hope that you may find it within you to see his virtue, and that he may be granted the chance to continue a life where he continues to strive for his community, and succeed for his family as not only a husband, but also as a father of children who are depending on him.

I thank you for taking the time to read this.

Very respectfully,
Nida Ziyadeh

October 14, 2025

Honorable Cynthia M. Rufe
US District Court
Eastern District of Pennsylvania
601 Market Square
Philadelphia, PA 19106
Honorable Cynthia M. Rufe

    My name is Michael Russell Davis, I am an inmate in FDC-Philadelphia, reg#. 33473-511. I am housed in the same housing unit as Isaam Jaghama. I am writing this letter to you as a character reference letter for Isaam Jaghama who will appear before your court for sentencing due to his federal conviction.

    I am fully aware of the crime Isaam Jaghama was found guilty of and the heinous actions that resulted in a loss of life. There are no words of bereavement that I can offer that will anguish the emotional pain and suffering the loved ones of the victims of Isaam Jaghama's actions. I can only write about Mr. Jaghama's remorse and rehabilitation steps in FDC-Philadelphia.

    I arrived at the same housing unit in FDC-Philadelphia as Isaam Jaghama on September 7, 2024. Immediately upon my arrival Mr. Jaghama eased the trepidation and anxiety I was feeling by introducing himself and assisting with my settling into the unit. His genuine friendliness and emotional guidance has continued to this day. Mr Jaghama has been instrumental in my acclimation to becoming an inmate at FDC-Philadelphia.

    I was initially quite hesitant to Mr. Jaghama's overtures of friendship, due to my own prejudicial opinions of predatory prison culture. As time passed my opinion of Mr. Jaghama changed dramatically, as I came to realize Mr. Jaghama had absolutely no ulterior motives. Once Mr. Jaghama found out I was extradited from my home in Switzerland and I was 59 years old he felt he could openly speak with me even though his English is limited.

    Mr Jaghama and I have formed a bonding relationship over the past thirteen (13) months which has included hours of private conversations through which I have witnessed the extreme sorrow he feels for his actions that have resulted in a loss of life.

    Your Honor, I can write with a certainty that Mr. Jaghama's sorrow and remorse is sincere and not attributed to a self-centered attitude. My strong belief in Mr. Jaghama's remorse is based on numerous conversations with him in which I have come to the conclusion that it is incredibly difficult and quite challenging for Mr. Jaghama in the current environment of FDC-Philadelphia to express his emotions of regret and sorrow due to his limited English language skills and a miserable subculture of "prison tough" mindset of showing no weakness, mentally and/or physically. I being a sexagenarian and having lived in Europe the past thirteen (13) years do not subscribe to such trivial and nonsensical masculine ideology of prison behavior. I expressed as much to Mr. Jaghama which led to him becoming more forthright with me about his remorse for his actions and his hearfelt sorrow and sympathy for Fire Lt. Sean Willamson and his family. Mr. Jaghama has also shared with me the love he has for his own family, especially

1

his children that he feels he let them down and that they have to endure his incarceration due to his actions. Mr. Jaghama has told me on many occasions he wishes deep in his heart he can take back what has happened, but he clearly understands he cannot. Mr Jaghama consistently tells me he has a heavy heart of sorrow for the loved ones of Fire Lt. Sean Williamson,  Mr. Jaghama equally confides in me to not speak of his remorseful emotions to other inmates, because he fears he would be stigmatized as weak and culpable in the eyes of the more stronger inmates which can lead to a stereotype that the is cooperating with the government.

      I have taken notice that Mr. Jaghama works tirelessly as the head orderly. In this position, Mr. Jaghama is sort of a "Jack of all Trades". He helps everyone who requires his assistance regardless of race, color, or creed. Mr Jaghama has immersed himself in his duties of head orderly as a rehabilitative self-therapy. Mr. Jaghama has assisted every inmate who requires his assistance in a variety of issues, ranging from administrative policies of the facility to mediating differences between inmates preventing further escalation. Observing Mr. Jaghama over the past year perform his daily duties which begin at 6:00 AM and ends at 9:30 PM., I recollect a famous quote from William Butler Yates...Soldier, Scholar, Horseman,He. All he did, he did perfectly as if he had but that one trait."

      In conclusion your Honor, I want to end with the following thought-

      Judges gain insight that with the passage of time only can come with experience on the bench and the judicial maturation just like prisoners who evolved into better human beings during their lengthy periods of incarceration. Judges evolve with the passion of years on the bench. Mr. Jaghama's extraordinary rehabilitation in the face of the severity of his pre-determined sentence is a testament to his character and reflects his growth and change.

      Your Honor, I understand Mr. Jaghama must face punishment for his reprehensible actions that resulted in the loss of life, I also understand that you are the sole authority that will render an appropriate sentence. I hope that you see Mr. Isaam Jaghama is a truly compassionate human being, that is very repentant and full of contrition. Mr. Jaghama understands he made a terrible mistake, from decisions all of his own. He also acknowledges that these mistakes cost the life of Fire Lt. Sean Williamson. I believe Mr. Jaghama deserves a chance at redemption and my hope is that your Honor will impose a sentence that will afford Mr. Jaghama the opportunity to reintegrate back to his community to become a positive individual in society.

      Thank you for the time and consideration you have taken to read this letter.

Sincerely,

Michael Russel Davis
33473-511